UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>SEROFIM MUROFF; BLACKHAWK MANAGER, LLC; ISR CAPITAL, LLC; EQUITY RECAP ACCOUNT, LLC; and DEBRA L. RIDDLE;<br><br>　　　　　　Defendants. | Case No. 1:17-cv-00180-EJL<br><br>**ORDER** |

Currently pending before the Court are: (1) Motion by the Independent Manager for an Order Staying Litigation against Blackhawk Manager, LLC, ISR Capital, LLC and Related Funds and Assets (Dkt. 17) ("Motion to Stay"); (2) Request for Judicial Notice in Support of Motion by the Independent Manager for an Order Staying Litigation against Blackhawk Manager, LLC, ISR Capital, LLC and Related Funds and Assets (Dkt. 17-4) ("Request for Judicial Notice"); (3) Motion to Intervene (Dkt. 24) filed by individual investors in Blackhawk Gold, LLC ("Blackhawk Claimants' Motion to Intervene"); (4) Interested Party U.S. Bank National Association's Motion to Intervene for Limited Purpose (Dkt. 30) ("U.S. Bank's Motion to Intervene"); and (5) Motion to Intervene to Respond to Motion for Stay (Dkt. 35) filed by individual investors in Quartzburg Gold, LLC

ORDER - 1

("Quartzburg Claimants' Motion to Intervene"). The parties filed responsive briefing and the Motions are now ripe for decision.

Having fully reviewed the docket herein, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decision-making process would not be significantly aided by oral argument, the Motions shall be decided on the record before this Court without oral argument.

## BACKGROUND

On April 28, 2017, Plaintiff, the United States Securities and Exchange Commission ("SEC" or "Commission") filed a Complaint against Defendants alleging various claims of securities fraud and investment advisor fraud. (Dkt. 1.) The SEC alleged that Defendants Serofim Muroff; Blackhawk Manager, LLC ("Blackhawk Manager"); ISR Capital, LLC ("ISR Capital"); and Equity Recap Account, LLC ("Equity Recap") (collectively, the "Muroff Defendants") violated the Securities and Exchange Act and the Investment Advisers Act by fraudulently mishandling investor funds obtained from their participation in the EB-5 Immigrant Investment Program ("EB-5 Program"). *Id.*

More specifically, in the Complaint, the SEC alleged that beginning in or about May 2010 and continuing through 2013, Defendants raised approximately $140.5 million from over 280 foreign investors through the sale of securities in Blackhawk Gold, LLC and Quartzburg Gold, LLC (collectively, the "Funds"). The SEC alleged that the offerings were sponsored by Defendant Muroff's Idaho State Regional Center pursuant to the EB-5

Program, which is administered by the United States Citizenship and Immigration Service ("USCIS") and provides opportunity for foreign nationals to petition for United States residency if they make a qualified investment in a specified project that creates or preserves at least 10 jobs for United States workers.

Also on April 28, 2017, the SEC filed a Notice of Consent indicating that the Muroff Defendants consented to the entry of a final judgment in a form attached to a Consent. (Dkt. 2.)[1] The Muroff Defendants did not admit or deny the allegations in the Complaint but consented to entry of the Final Judgment. (*Id.* at ¶ 2.)

On May 10, 2017, the Court entered a Final Judgment consistent with the parties' Consent and their proposed judgment. (Dkt. 6.) Generally, the Final Judgment includes: injunctive relief; disgorgement in the amount of $5,062,082 plus prejudgment interest; and a civil penalty in the amount of $2,000,000 to be paid to the SEC. (*Id.* at p. 6.). In addition, Defendants Blackhawk Manager and ISR Capital agreed, at their own expense and through their management of the Funds, to retain: (1) an Independent Manager to replace Defendant Muroff as CEO of both Blackhawk Manager and ISR Capital and (2) an Independent Monitor to oversee the management and activities of Blackhawk Manager and ISR Capital in their management of the Funds. (Dkt. 6, pp. 9-10.) In particular, the Independent Monitor was tasked with:

> serv[ing] to protect the interests of the investors who have purchased securities in the Funds through Defendants in connection with the EB-5 Immigrant Investor Program

---

1 A separate Notice of Consent to judgment was filed for Defendant Debra L. Riddle. (Dkt. 3.)

> ("Investors") as Blackhawk Manager, ISR Capital, and the Independent Manager endeavor to operate the job-creating businesses and work with the Investors to advance their EB-5 petitions in compliance with the laws, rules, and regulations of the United States Customs and Immigration Services.

(*Id.* at p. 10.)

The Final Judgment includes four other requirements relevant herein. First, it requires the Muroff Defendants to provide, either directly or through the Independent Manager, certain information including *inter alia*: (1) the identification of all investors whose money or assets were in the custody or control of Blackhawk Manager, ISR Capital, or the Funds; (2) a preliminary accounting of all assets and liabilities of Blackhawk Manager, ISR Capital, and the Funds; and (3) quarterly accountings. (*Id.* at pp. 11-12.) This information must be provided to the Independent Monitor, SEC, and, in certain instances, to the Investors. (*Id.*)

Second, the Final Judgment requires that the Muroff Defendants provide the Independent Monitor with full and complete access to: (1) books and records of Blackhawk Manager, ISR Capital, and the Funds; (2) their principals, managers, officers, directors, employees, agents or consultants; and (3) their physical office space. (*Id.* at pp. 12-13.) Such access is necessary to ensure that the Independent Monitor is able to oversee the activities of Blackhawk Manager, ISR Capital, and the Funds. (*Id.*) If the Independent Monitor discovers any transactions or planned transactions that are not in the Investors' best interests, the Independent Monitor must report such transactions to the SEC. (*Id.* at pp. 12-13.)

**ORDER - 4**

Third, the Final Judgment requires that the Muroff Defendants certify in writing and with evidentiary support compliance with certain requirements or "undertakings" set forth in the Final Judgment. (*Id.* at pp. 15-16.) The Final Judgment allows the Independent Monitor to add any additional undertakings it deems necessary. (*Id.* at p. 15.)

Fourth, the Final Judgment does not directly address how alleged victims of the fraudulent scheme will be compensated. However, it contemplates the existence of parallel proceedings or "Related Investor Action[s]" defined as "private damages action[s] brought against any Defendant by or on behalf of one or more investors based on substantially the same facts as alleged in the Complaint in this action." (Dkt. 6, p. 8.) The Final Judgment makes clear that any compensation Defendants might have to pay in the Related Investor Actions may not be offset by, or offset against, the civil penalties in the instant action. (*Id.*)

The Final Judgment is binding on: (1) the Muroff Defendants; (2) the Muroff Defendants' officers, agents, servants, employees, and attorneys; and (3) any other persons in concert or participation with the individuals identified in (1) and (2). (*Id.* at p. 3.) There are no on-going reporting requirements involving the Court. Rather, the entire structure of the Final Judgment allows the SEC, through the Independent Monitor, to oversee the management of the Defendant entities through the Independent Manager and without on-going court involvement.

On August 27, 2018, the Independent Manager filed a Motion to Stay Litigation against Blackhawk Manager, ISR Capital, and Related Funds and Assets (Dkt. 17.) The Independent Manager identifies two proceedings at issue that it seeks to stay: (1) *Hongbo*

*Shao v. Serofim Muroff*, No. 1:18-cv-295-BLW (D. Idaho) (the "Idaho Lawsuit") and (2) *Chi Chen, et al. v. U.S. Bank National Association, et al.*, No. 2:16-cv-1109-RSM (W.D. Wash.) (consolidated with 2:16-cv-01113 (W.D. Wash.) (the "Washington Lawsuit").

The Idaho Lawsuit involves claims brought by the Blackhawk Claimants, a group of investors in Blackhawk Gold. (Dkt. 17-3, Ex. 1). The defendants in the Idaho Lawsuit include but are not limited to the Defendants in the above-captioned proceedings and the allegations are largely consistent with those in the SEC's Complaint. (*Id.*)

The Washington Lawsuit involves claims brought by the Quartzburg Claimants, 52 of the 160 investors in Quartzburg Gold. (Dkt. 17-3, Ex. 2.) Several of the defendants in the Washington Lawsuit are entities managed by the Independent Manager including Quartzburg Gold, IRS Capital, and Idaho State Regional Center, LLC. (*Id.*) U.S. Bank is also a defendant in the Washington Lawsuit. (*Id.*)

The Independent Manager states that it has made progress toward the goal of certification under the Final Judgment but substantial additional work remains to be done. (Dkt. 17-1, p. 5.) The Independent Manager maintains that it has been unable to bring Blackhawk Manager, ISR Capital, and the Funds into compliance with the Final Judgment because of its duty to defend these entities in the Idaho and Washington Lawsuits. (*Id.*) Further, without the requested stay, the Independent Manager argues that neither it nor the Independent Monitor can fully perform their Court-mandated duties and accomplish the goals of the Final Judgment, including to protect all investors and creditors, as limited assets are being consumed by litigation. (*Id.* at p. 13.)

**ORDER - 6**

The Independent Monitor joins the Independent Manager's Motion to Stay. (Dkt. 27.) The SEC does not oppose the Motion to Stay. (Dkt. 21.)

Defendants Serofim Muroff and Equity Recap Account, LLC join in the Motion to Stay but only to the extent the motion is extended to all parties in the Idaho and Washington Lawsuits. (Dkt. 33.) They argue that a stay as to some litigants but not all would result in severe prejudice to non-stayed litigant and risk inconsistent results.

Three Motions to Intervene have been filed in these proceedings, each for the limited purpose of opposing the Motion to Stay: (1) Blackhawk Claimants' Motion to Intervene (Dkt. 24); (2) U.S. Bank's Motion to Intervene (Dkt. 30); and (3) the Quartzburg Claimants' Motion to Intervene (Dkt. 35). The potential intervenors also filed briefs in opposition to the Motion to Stay. (Dkts. 31, 32, 37.)

## DISCUSSION

As discussed more fully below, the request for judicial notice is granted; the motions to intervene are granted; and the motion to stay is denied.

**1.      Request for Judicial Notice (Dkt. 17-4) is Granted.**

The Independent Manager filed a Request for Judicial Notice pursuant to Federal Rule of Evidence 201 and in support of the Motion to Stay. (Dkt. 17-4.) The Independent Manager requests that the Court take judicial notice of "following documents and information:" (1) the Second Amended Complaint filed in the Idaho lawsuit on August 13, 2018 and (2) the Third Amended Complaint filed in the Washington lawsuit on July 16, 2018. (Dkt. 17-4). The request is unopposed.

**ORDER - 7**

Pursuant to Federal Rule of Evidence 201, the Court may take judicial notice of facts "not subject to reasonable dispute" because they are either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." F.R.E. 201(b). Generally, the Court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *United States ex. rel. Robinson Rancheria Citizens Counsil v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 11992) (quoting *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979.)

In this case, the Court finds the Request for Judicial Notice appropriate. The pleadings in the Idaho and Washington Lawsuits are not subject to reasonable dispute; they can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned; and there is no dispute that these proceedings have a direct relation to matters at issue. Accordingly, the Request for Judicial Notice (Dkt. 17-4) is granted.

## 2. Motions to Intervene (Dkts. 24, 30, 35)

There are three motions to intervene- all for the limited purpose of opposing the Independent Manager's Motion to Stay (Dkt. 17). (Dkts. 24, 30, 35.) The Independent Manager opposes two of the three motions to intervene. (Dkts. 29, 46, 47). The SEC does not oppose any of the motions to intervene. (Dkts. 28.)

Generally, the Ninth Circuit directs district courts to "interpret the requirements broadly in favor of intervention." *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998).

ORDER - 8

In addition, the Court should be guided "primarily by practical and equitable considerations." *Id.*

Rule 24(a) governs intervention of right. In relevant part, Rule 24 (a) states that the Court must allow intervention if the party:

> claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2).

Rule 24(b) governs permissive intervention. In relevant part, Rule 24(b) states that the Court may permit intervention if the party "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Further, "[i]n exercising its discretion, the court must consider whether intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

### A. U.S. Bank's Motion to Intervene (Dkt. 30) is Granted.

U.S. Bank seeks to intervene in this lawsuit to protect its interest in the outcome of the Motion to Stay. U.S. Bank asserts that it is a co-defendant in the Washington Lawsuit, which involves claims brought by the Quartzburg Claimants who also seek to intervene in this lawsuit. U.S. Bank opposes the requested stay because it would delay discovery and its defense in the Washington Lawsuit.

No objection has been filed in response to U.S. Bank's Motion to Intervene. In fact, the Independent Manager filed a Statement of Non-Opposition in Response to U.S. Bank's

ORDER - 9

Motion to Intervene. (Dkt. 47.) Accordingly, in light of the liberal policy in favor of intervention, the limited purpose of the intervention sought, and consistent with the additional analysis provided below, the Court grants U.S. Bank's Motion to Intervene for the limited purpose of responding to the Motion to Stay (Dkt. 30.)

### B. Blackhawk Claimants' Motion to Intervene (Dkts. 24) and Quartzburg Claimants' Motion to Intervene (Dkt. 35) are Granted.

The Blackhawk Claimants are plaintiffs in the Idaho Lawsuit and the Quartzburg Claimants are plaintiffs in the Washington Lawsuit. They argue their rights and interests to pursue civil claims and damages in those lawsuits will be impacted if the Motion to Stay is granted. Accordingly, they seek intervention of right and permissive intervention. Under either rule, Intervenors have met their burden.

### (1) Intervention of Right

The Ninth Circuit outlines four requirements for intervention as of right: (1) the application must be timely; (2) the applicant must have a significantly protectable interest relating to the property or transaction that is the subject of the action; (3) the applicant must be situated such that the disposition may impair or impede the party's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by existing parties. *Arayaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003). Each of the four requirements must be satisfied. *Id.*

First, the motions are timely. In determining whether a motion to intervene is timely, three factors must be considered: (1) stage of the proceedings; (2) prejudice to other parties;

**ORDER - 10**

and (3) reason for, and length of delay. *Smith v. Marsh*, 194 F.3d 1045, 1049 (9th Cir. 1999.) In this case, there is no relevant delay. The Motion to Stay was filed and served on August 27, 2018. The motions to intervene, all seeking to intervene solely for the purpose of responding to the Motion to Stay, were filed within 21 days of service and to allow the Intervenors time to file timely objections to the Motion to Stay. *See* Dist. Idaho Loc. Civ. R. 7.1(c).

Second, the Intervenors have a significant, protectable interest in the Motion to Stay. "An applicant has a 'significant protectable interest' in an action if (1) it asserts an interest that is protected under some law, and (2) there is a 'relationship' between its legally protected interest and the plaintiff's claims." *United States v. City of Los Angeles*, 288 F.3d 391, 398 (9th Cir. 2002) (quoting D*onnelly v. Glickman,* 159 F.3d 405, 409 (1998)). "The 'interest' test is not a clear-cut or bright-line rule, because '[n]o specific legal or equitable interest need be established.'" *Id.* (citing *Greene v. United States,* 996 F.2d 973, 976 (9th Cir. 1993)). Rather, it "is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *County of Fresno v. Andrus,* 622 F.2d 436, 438 (9th Cir.1980) (internal quotation marks and citation omitted).

In this case, Intervenors do not seek to intervene in this lawsuit as a whole; they simply seek to have input regarding the pending Motion to Stay, which would delay their ability to pursue the claims they have filed in the Idaho and Washington Lawsuits. Thus, they have an interest in the outcome of the motion and there is a relationship between their

interests in the Idaho and Washington Lawsuits and resolution of the Motion to Stay. The Independent Manager implicitly acknowledged as much by ensuring that Intervenors had notice of the Motion to Stay. (Dkts. 17-5, 18.)

Third, granting the Motion to Stay would impair or impede the Intervenors' ability to proceed with their claims in the Idaho and Washington Litigation at least for the duration of the stay. Moreover, intervention is necessary in these proceedings because the Motion to Stay was filed in this action and not in either the Idaho or the Washington Lawsuit. If intervention is not permitted, then Intervenors would not have an opportunity to educate the Court regarding their relative interests in the on-going and related litigation and how those interests might be impacted by a stay.

Fourth, the parties in this lawsuit are not in a position to protect the interests of the Intervenors. The Intervenors clearly believe that a stay is not in their interests, specifically with regard to a speedy resolution of the Idaho and Washington Lawsuits. The other parties in this lawsuit, specifically including some of the defendants in the Idaho and Washington Lawsuits, do not share these interests. Moreover, none has opposed the Motion to Stay.

The Independent Manager, the Independent Monitor, and the SEC are focused on bringing the Defendant entities into compliance with the Final Judgment, which provides for injunctive relief, disgorgement, and a civil penalty that may or may not be shared with individual investors. The Intervenors constitute a subset of these individual investors and are focused on obtaining compensation for their individual damages from the Muroff Defendants and others. Certainly, there is overlap between the two groups and their

**ORDER - 12**

interests in addressing Defendants' wrongdoing. However, with potentially limited resources available for compensation and complying with the Final Judgement's penalties, these interests are potentially in conflict.

In sum, the Court finds the four requirements for intervention of right have been met. To hold otherwise would be unreasonable given the liberal policy in favor of intervention, the limited purpose of the intervention sought here, and the Intervenors' interests in pursuing their individual remedies against the Muroff Defendants and others.

(2)     *Permissive Intervention*

The Court also finds permissive intervention is appropriate. Generally, "[a]n applicant who seeks permissive intervention must prove that it meets three threshold requirements: (1) it shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims." *Donnelly v. Glickman*, 159 F.3d at 412. However, where, as here, a party seeks to intervene only for a limited purpose, the showing of commonality is reduced and it is not necessary to demonstrate an independent basis for jurisdiction. *See Beckman Indus. v. International Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992). The Court finds permissive intervention is appropriate for the same reasons supporting intervention of right.

**3.     Motion to Stay (Dkt. 17)**

The Independent Manager requests an order staying all litigation against Blackhawk Manager, ISR Capital, the Funds, and entities owned by the Funds for a period of six to nine months. The Independent Manager argues that the Court has authority and discretion

ORDER - 13

to issue a litigation stay to allow the Independent Manager and Independent Monitor to carry out their duties under the Final Judgment including: (1) managing Blackhawk Manager, ISR Capital, and the Funds to protect the interests of all investors who purchased securities in the funds; (2) operating job-creating businesses to support the pending EB-5 petitions; and (3) putting the entities in a position where Defendants are able to certify their compliance with the undertakings set forth in the final Judgment. (Dkt. 17, pp. 10-11.)

### A.    There is No Applicable Precedent to Support the Requested Stay.

Assuming for the sake of argument that this Court has the discretion to issue a stay impacting the Idaho and Washington Lawsuits, the Court declines to exercise such authority over on-going litigation in other federal court proceedings involving non-parties to the instant proceedings. Further, the requested stay would not enhance judicial efficiencies and there is no suggestion in the record that these other proceedings are being pursued fraudulently or by individuals acting in concert with the Muroff Defendants.

Generally, a district court "has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones,* 520 U.S. 681, 706–707 (1997) (citing *Landis v. N. Am. Co.,* 299 U.S. 248, 254 (1936)). A *Landis* stay, may be appropriate when, for example, the result of a separate proceeding has some bearing upon the district court case. *Leyva v. Certified Grocers of Cal., Ltd.,* 593 F.2d 857, 864 (9th Cir. 1979). "This rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court." *Id.*

ORDER - 14

However, the discretion described in the *Landis* decision is not without limits. First, the Court's inherent authority to issue a *Landis* stay generally extends to litigation and proceedings before that Court- and not to non-parties or litigation in other courts. "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes *on its docket* with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. at 254 (emphasis added). Second, in deciding whether to grant a *Landis* stay, the Court must weigh the competing interests of the parties, considering in particular: "[1] possible damage which may result from the granting of a stay, [2] the hardship or inequity which a party may suffer in being required to go forward, and [3] the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyear v. Mirant Corp.,* 398 F.3d 1098, 1110 (9th Cir. 2005) (quotation marks omitted). "[I]f there is even a fair possibility that the stay ... will work damage to someone else," the party seeking the stay "must make out a clear case of hardship or inequity." *Landis,* 299 U.S. at 255.

In addition, "[a] stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the court." *Leyva,* 593 F.2d at 864. For that reason, a *Landis* stay "should not be indefinite in nature." *Dependable Highway Express, Inc. v. Navigators Ins. Co.,* 498 F.3d 1059, 1066 (9th Cir. 2007).

**ORDER - 15**

In this case, the Independent Manager seeks a stay that applies to other court proceedings, will impact non-parties to the instant litigation, and would not have any impact on the "orderly course of justice" in terms of simplifying issues, proof, or questions of law. The instant proceedings have already resulted in a Final Judgment.

The Independent Manager argues that the requested stay is necessary to allow it to focus on the instant proceedings and make it easier to comply with the requirements set forth in the Final Judgment. However, a stay for such purposes is not appropriate under the authority of *Landis* and its Ninth Circuit case law progeny.

### B. *The Terms of the Final Judgment Do Not Warrant the Requested Stay*

The Final Judgment recognizes the existence of parallel proceedings brought by individual investors. It does not provide authority for or otherwise contemplate the type of relief sought in the Motion to Stay.

First, the Court's continued jurisdiction over the case is limited to the issues set forth in that Final Judgment. (Dkt. 6, p. 16.) ("[T]he Court shall retain jurisdiction of this matter for the purpose of enforcing the terms of this Final Judgment.") Such jurisdiction extends to the parties to the Judgment and their agents. There is no authority in the Final Judgment directing the Court to exercise this continued jurisdiction over independent third parties or separate legal proceedings.

Second, the Final Judgment does not directly provide for recovery by the Investors. Instead, the Final Judgment provides for injunctive relief, disgorgement, and civil penalties to be paid to the SEC while assuming that there will be parallel civil proceedings brought

**ORDER - 16**

by the individual investors. These parallel proceedings are referred to in the Final Judgment as "Related Investor Action[s]." (Dkt. 7, pp. 7-8.)

Third, the Final Judgment specifically allows the SEC and Independent Monitor to oversee the ongoing management of the Defendant entities. The Court has not assumed any role in these activities except to exercise on-going jurisdiction over the matter to ensure that all the parties to the Final Judgment are complying with their obligations.

Accordingly, the Court does not find authority in the Final Judgment to issue a stay prohibiting "Related Investor Action[s]" from proceeding. Moreover, while the Independent Manager has demonstrated that defending against these lawsuits makes it more difficult to comply with its duties and obligations set forth in the Final Judgment, the record does not support a finding that allowing the parallel proceedings to move forward will necessarily prevent the Independent Manager from meeting its duties under the Final judgment. In other words, the "Related Investor Action[s]" are not inconsistent with the Final Judgment.

### C.    *Case Law Regarding Receiverships Is Not Applicable*

The Independent Manager analogizes the process set forth in the Final Judgment in this case to circumstances involving receiverships, "where courts routinely impose litigation stays to protect all interested creditors." (Dkt. 17-1, p. 11.) However, the analogy is not accurate and the case law the Independent Manager relies upon is distinct from the issues raised in these proceedings.

ORDER - 17

The Independent Manager primarily relies upon two cases in support of this argument: *SEC v. Wencke*, 622 F.2d 1363, 1369 (9th Cir. 1980) and *SEC v. Credit Bancorp., Ltd.*, 93 F.Supp.2d 475, 477 (S.D. N.Y. 2000). These decisions involve district court orders issuing stays impacting non-parties and proceedings before other courts. However, both decisions involve receiverships and the other proceedings impacted by the stay involved potentially fraudulent claims that threaten the receivership estate and were brought by the insiders removed from control pursuant to the receivership. *Id.*

In the *Wencke* decision, the Ninth Circuit reasons that the authority for the stay extends from the Court's authority over the receivership estate: "The power of the district court to issue a stay, effective against all persons, of all proceedings against the receivership entities rests as much on its control over the property placed in receivership as on its jurisdiction over the parties to the securities fraud case." *Wencke*, 622 F.2d at 1369. In contrast, in this case, the Court has neither appointed a receiver nor has it otherwise taken custody or control over the Defendant organizations or their assets. Instead, the Court entered a Final Order that outlined procedures, agreed to by the parties, that allow the Defendant entities to be managed by the Independent Manager with oversight through the Independent Monitor and SEC.

Moreover, the stay issued in *Wencke* was initiated along with a preliminary injunction out of necessity in order to address potentially fraudulent litigation. *Wencke,* 622 F.2d at 1366-67. "With regard to issuance of the blanket stay, the SEC and receiver claim there was a danger that some litigation commenced or prosecuted against the receivership

ORDER - 18

might be collusive or fraudulent, thus further dissipating the assets of the receivership entities to the detriment of innocent shareholders." *Id.* at 1372. Thus, the blanket stay allowed litigation to proceed with leave of court. This allowed the Court to review the litigation and allow legitimate claims to proceed.

Similarly, in *Credit Bancorp.*, a stay was issued against certain non-parties in order to prevent an alleged insider from pursuing insurance coverage in a separate declaratory judgment proceeding. 93 F. Supp.2d at 476. Notably, the insurance policies at issue in the separate declaratory judgment proceeding were "the largest contingent asset of the Receivership estate." *Id.* Thus, the stay was necessary to protect the estate from a potential judgment benefitting one of the securities fraud *defendants*, an outcome that threatened to prevent the estate property from being returned to the proper parties in interest. *Id.*

In this case, the critical distinction is that there is no suggestion that either the Washington or Idaho Lawsuit involves fraudulent claims. Thus, there is no argument that the stay is necessary to protect "innocent investors" from collusive or fraudulent claims or "continuation of the original fraudulent scheme" *Wencke*, 622 F.2d at 1373. Accordingly, the Court finds the receivership case law inapplicable. There is simply no support for a stay, such as that requested here, that risks "be[ing] used to prejudice the rights which innocent and legitimate creditors may have." *Id.*

### D.    *Additional Equitable Considerations*

The Independent Manager and Independent Monitor argue that the stay is necessary in order to preserve the limited assets of Blackhawk Manager, ISR Capitol, and the Funds

ORDER - 19

for the benefit of all investors and creditors. Without a stay, the Independent Manager believes that a subset of these investors, the Blackhawk and Quartzburg Claimants, threaten to diminish the assets available to the remaining investors.

In this regard, the Court notes that the Final Judgment is the product of an agreement between Defendant Muroff and the entities controlled by Defendant Muroff, on the one hand, and the SEC on the other. As reflected in the Complaint and Final Judgment, the SEC has an important role in enforcing securities laws, including *inter alia*: the Securities Act, the Exchange Act, and the Investment Advisers Act in order to protect innocent investors and maintain investor confidence in securities markets. *See also Wencke*, 622 F.3d at 1372. At the same time, the individual investors have their own interests in proceeding with their private claims against the Muroff Defendants and others.

The Court is cognizant of its duties to construe, administer, and employ the procedural rules "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Issuing a stay to allow the SEC to pursue its remedies at the potential cost of the individual plaintiffs' just and speedy determination of their rights does not seem reasonable under the circumstances presented here especially where the Final Judgment contemplates the parallel proceedings; a stay would impact innocent non-parties and proceedings not before this Court; and the record is insufficient to demonstrate that it would be impossible for the Independent Manager to fulfill its duties under the Final Judgment and also participate in the pending Idaho and Washington Lawsuits.

**ORDER - 20**

## CONCLUSION

The Court does not find the requested stay appropriate under the circumstances and under the authority provided. Fundamentally, the Court is concerned about exercising its jurisdiction over non-parties and separate legal proceedings and, even assuming that it has such authority, would decline to do so.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED:

(1) Motion by the Independent Manager for an Order Staying Litigation against Blackhawk Manager, LLC, ISR Capital, LLC and Related Funds and Assets (Dkt. 17) is **DENIED**;

(2) Request for Judicial Notice in Support of Motion by the Independent Manager for an Order Staying Litigation against Blackhawk Manager, LLC, ISR Capital, LLC and Related Funds and Assets (Dkt. 17-4) is **GRANTED**;

(3) Motion to Intervene (Dkt. 24) is **GRANTED**;

(4) Interested Party U.S. Bank National Association's Motion to Intervene for Limited Purpose (Dkt. 30) is **GRANTED**; and

(5) Motion to Intervene to Respond to Motion for Stay (Dkt. 35) is **GRANTED**.



DATED: December 4, 2018

Edward J. Lodge
United States District Judge

**ORDER - 21**